# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| JACK LOSEE,<br><br>    Plaintiff,<br><br>vs.<br><br>BETH SKINNER, KRISTOFER KARBERG, MICHELLE WADDLE, TRACY DIETSCH, and LINDSAY STUPKA,<br><br>    Defendants. | No. 22-CV-4-CJW-KEM<br><br>**ORDER** |

_____

This matter is before the Court on plaintiff Jack Losee's pro se complaint filed under Title 42, United States Code, Section 1983 (Doc. 1).[1] Plaintiff also filed motions to appoint counsel (Doc. 2), for class certification (Doc. 3), for a temporary restraining order and preliminary injunction (Doc. 4), and for a hearing (Doc. 6). Plaintiff also filed a supplement to his complaint. (Doc. 5). Plaintiff alleges defendants are deliberately indifferent to conditions in the Anamosa State Penitentiary, defendants' classification system violates due process, and defendants have retaliated against him for filing grievances and complaints. For the following reasons, plaintiff's claim related to the air quality and ventilation conditions and plaintiff's claim related to retaliation are allowed to proceed, his due process claim related to the classification system is dismissed for failure to state a claim, his motion for class certification is denied, his motion for a

---

[1] Plaintiff paid the full $402 filing fee.

temporary restraining order and preliminary injunction is denied, his motion for a hearing is denied, and his motion to appoint counsel is granted.

## I. INITIAL REVIEW STANDARD

Courts must liberally construe a pro se complaint. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court must review this case under the provisions of Title 28, United States Code, Section 1915A(a). The Court may dismiss a complaint if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment. 28 U.S.C. § 1915A(b).

In reviewing a prisoner or in forma pauperis complaint, unless the facts alleged are clearly baseless, a court must weigh them in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Carmichael v. Fed. Bureau of Prisons*, 2010 WL 5829239, at *1 (D. Minn. Dec. 20, 2010) (applying *Neitzke* in a Section 1915A initial review). In determining whether a complaint fails to state a claim, courts rely on the standards articulated under Federal Rule of Procedure 12(b)(6). *See Hake v. Clarke,* 91 F.3d 1129, 1132 & n. 3 (8th Cir. 1996) (stating initial review for Rule 12(b)(6) purposes was authorized for prisoner cases under 28 U.S.C. § 1915A). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a pro se complaint, however inartfully pleaded, . . . to less stringent

standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon,* 747 F.3d 537, 541 (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam)) (modifications in original).

## II. INITIAL REVIEW ANALYSIS

### A. Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United

3

States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Initial Review Analysis

Plaintiff's pro se complaint alleges that his Eighth Amendment, Fourteenth Amendment, and First Amendment rights have been violated. He makes three claims: 1) defendants are not remedying air quality issues stemming from poor ventilation and mold and the conditions amount to cruel and unusual punishment; 2) defendants' job classification process violates the due process clause; and 3) defendants have retaliated against plaintiff for filing grievances and complaints in violation of his First Amendment rights. The Court will address each claim in turn.

#### 1. Air Quality and Ventilation

Plaintiff alleges that the conditions of confinement in Living Unit C (LUC) at Anamosa State Penitentiary violate the Eighth Amendment. He alleges that LUC has poor ventilation and air quality and that there is mold throughout the pipe chases that run through the cells and under the plaster. (Doc. 1, at 8). More specifically, he contends that there is no central air system, the air quality does not meet ASHREA standards for a correctional setting, and the walls drip with moisture from humidity and lack of ventilation. (*Id.*). Plaintiff also alleges that, because the air quality is poor, there were over 300 cases of COVID-19 among LUC inmates within one week in October 2020 and that 8 inmates consequently died. (*Id.*). He states that there is a high risk of further outbreaks and additional deaths from COVID-19 because LUC houses numerous elderly inmates with medical conditions. (*Id.*) Plaintiff alleges that defendant Beth Skinner, Director of the Iowa Department of Corrections, and defendant Kristofer Karberg, Warden of Anamosa State Penitentiary, know about the poor air quality and ventilation but have failed to take any actions to improve the conditions. (Doc. 1, at 8). Plaintiff also filed a related motion for a temporary restraining order and preliminary injunction,

4

and declaration in support, seeking an order closing LUC while the mold is removed and an "adequate ventilation system" is installed. (Doc. 4, at 2-3).

"The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." *Robinson v. Hager,* 292 F.3d 560, 563 (8th Cir. 2002) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). A prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver v. Clark,* 45 F.3d 1253, 1255 (8th Cir. 1995); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (stating that prison "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment" nor can they result "in unquestioned and serious deprivation of basic human needs"). To establish deliberate indifference, a plaintiff must demonstrate: (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *Robinson,* 292 F.3d at 563-64. A prison official thus "cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

The Court finds that plaintiff's complaint is sufficient to pass initial review on this claim. Inadequate ventilation conditions have been found to be Eighth Amendment violations. *See, e.g., Hutchings v. Corum,* 501 F. Supp. 1276, 1293 (W.D. Mo. 1980) (holding that "this Court must find that the ventilation system at CCJ constitutes a constitutionally intolerable living condition"); *Lightfoot v. Walker,* 486 F. Supp. 504, 511 (S.D. Ill. 1980); *Rhem v. Malcolm,* 371 F. Supp. 594, 627 (S.D.N.Y 1974). Plaintiff alleges that the poor air quality, inadequate ventilation, and mold cause a substantial risk

5

of serious harm. He also contends that there is a substantial risk stemming from another potential COVID-19 outbreak. Plaintiff alleges defendants Skinner and Karberg were aware of and disregarded these risks. He contends that Skinner has known about the LUC air quality issues for two years and has not taken steps to address the problem. Plaintiff also contends that Karberg is aware of the risk of harm but has not acted. In response to grievances he has submitted, plaintiff contends that defendant "Karberg stated that ventilation & air conditioning are on DOC projects list, no timeline determined. No decision to clean away the mold." (Doc. 1, at 15). Thus, plaintiff's contention related to the poor air quality, ventilation, and mold survives initial review and the Court will allow this claim to proceed. Plaintiff's contention that the ventilation system deficiencies caused inmates to contract COVID-19 is not a separate claim, but rather, alleged evidence that the ventilation system is defective. That may be a matter of speculation, but it is not a matter upon which the Court need rule at this time.

### 2. *Job Classification System*

Plaintiff also alleges that defendants violated his and other inmates' due process rights through Anamosa State Penitentiary's inmate classification system. Plaintiff states that inmates are classified "for the determination of what institutional jobs we can or cannot be assigned to, and what restrictions will and will not be placed upon us at those job sites."[2] (Doc. 1, at 9). Plaintiff does not take issue with the use of a classification system, but rather asserts the procedures utilized in the system violate his and other inmates' rights. He asserts that the inmates' inability to be present and involved in the process, put forth evidence, or appeal the decision all violate his due process rights. (*Id.*). For relief, he requests an "[o]rder directing defendants to conduct classification

---

[2] Plaintiff asserts that on July 21, 2021, "a [m]emorandum was posted describing a job classification process and checklist, describing work classes 'Categories A through D,' yet no mention of what criteria is being used or considered." (Doc. 1, at 11).

6

hearings in a manner that does not deny inmates due process," including allowing inmates to present evidence at hearings, know the criteria and who is making the decisions, and have the ability to appeal. (*Id.,* at 7).

To show a violation of the Fourteenth Amendment's due process clause, a plaintiff first must demonstrate a deprivation of life, liberty, or property. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Only then can the plaintiff seek to invoke the procedural protections of the due process clause. *Id.* at 224; *see also Smith v. McKinney,* 954 F.3d 1075, 1079 (8th Cir. 2020) ("Once a liberty interest is established, the next question is what process is due."). "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, due process is only implicated if the conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. *See Ballinger v. Cedar Cty.,* 810 F.3d 557, 562 (8th Cir. 2016) (holding prisoner who spent approximately one year in isolation, limited shower access, social interaction, telephone or exercise was not atypical or significant deprivation under *Sandin*).

An inmate has neither a protectible property nor liberty interest in his custody classification. *Hartsfield v. Dep't of Corr.,* 107 Fed. App'x 695, 696 (8th Cir. 2004) (per curiam) ("we agree with the district court that [plaintiff] failed to state a due process claim, as he has no liberty interest in a particular classification and his segregation did not impose an atypical and significant hardship."); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) (stating inmates have no protected liberty interest in their classification). "Prisoner classification is not generally protected by due process. Due process is not implicated by classification systems with fewer privileges." *McGhee v. Waddle,* No. 4:18-CV-00260-RP-CFB, 2018 WL 10229963, at *2 (S.D. Iowa Sept. 17, 2018) (denying due process claim about policy that bars prisoner from advancing to a

7

higher status within 90 days of a major disciplinary report); *see also Madole v. Dorney,* No. 2:20-CV-02239, 2021 WL 499038, at *6 (W.D. Ark. Feb. 10, 2021) ("Discretionary decisions made in connection with inmate classification or housing implicates no liberty interest."); *Blair-Bey v. Iowa*, 732 Fed. App'x 488, 488 (8th Cir. 2018) (per curiam) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)) (stating there is no due process protection for prisoner classification). An inmate therefore cannot invoke procedural due process protections within that classification system. *See Walling v. Simmons,* No. CIV. A. 94-3398-GTV, 1998 WL 229541, at *3-4 (D. Kan. Apr. 8, 1998), *aff'd*, 156 F.3d 1245 (10th Cir. 1998) ("Because plaintiff had no protected liberty interest in his minimum custody classification, he was not entitled to any particular process before his reclassification."); *see also Moody v. Hardy,* No. 407CV035-P-D, 2007 WL 1610791, at *3 (N.D. Miss. June 1, 2007). Plaintiff does not have a protected interest in his classification and therefore is not entitled to due process protections when assigned to a particular category. Accordingly, the Court dismisses plaintiff's due process claims for failure to state a cognizable claim.

### 3. *Retaliation*

Plaintiff further alleges that his individual classification and corresponding restrictions are the result of defendants retaliating against him for filing grievances and complaints. Plaintiff states that he filed grievances and complaints against defendants Stupka and Dietsch between September and December 2021. (Doc. 1, at 11-12). Plaintiff asserts that, on December 15, 2021, defendant Stupka assigned plaintiff as a class "B" worker, which "affects the type of job I can and cannot be assigned to, restricts me on the use of tools, and affects the amount of pay I can earn." (Doc. 1, at 10). He also asserts it "restricts me from possible transfer to a medium security facility, my housing placement, etc., because it reflects poorly on me in my records." (*Id.*). Plaintiff alleges that no such restrictions had been placed on him until he filed complaints against

Dietsch and Stupka throughout the fall of 2021, and that they are not done for "any legitimate penological security concerns."[3] (*Id.*). Plaintiff also asserts that in September 2021, he requested he be classified for transfer because Anamosa State Penitentiary is becoming "more maximized as time goes by" and he is "minimum security custody level." (*Id.,* at 10-11). Plaintiff asserts that defendants Dietsch, Stupka, Waddle, and Karberg retaliated against him by reclassifying him as a class "B" worker with corresponding restrictions and by refusing to classify him for a transfer. (*Id.*).

Acts by prison officials may be actionable under Section 1983 if conducted in retaliation for the exercise of a constitutionally-protected right, even if those acts would have otherwise been proper. *Madewell,* 909 F.2d at 1206. Protected conduct includes the filing of grievances as a part of a prison procedure. *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989). To state a claim for retaliation, a prisoner must show that he exercised a protected right and suffered an adverse action, and that the exercise of the protected right was motivation for that adverse action. *See Williams v. Silvey*, 375 Fed. App'x 648, 650 (8th Cir. 2010) (unpublished); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1155–56 (8th Cir. 2009) (holding that filing disciplinary charge is actionable under Section 1983 if done in retaliation for inmate filing grievance, because retaliatory disciplinary charge strikes at heart of constitutional right to seek redress of grievances); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (stating that alleged retaliatory action must be such that it would chill person of ordinary firmness from engaging in protected activity); *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (holding that threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure). However, "a defendant may successfully defend a retaliatory-

---

[3] Plaintiff does state, though, that at some point under a previous classification system he was categorized as "assault potential," which appears potentially to undercut his assertion that he did not have restrictions prior to filing grievances. (Doc. 1, at 7, 9).

9

discipline claim by showing 'some evidence' that the inmate actually committed a rule violation. *Moore v. Plaster,* 266 F.3d 928, 931 (8th Cir. 2001). "In raising a retaliatory transfer claim, the prisoner . . . face[s] a substantial burden in attempting to prove that the actual motivating factor for his transfer was the impermissible retaliation." *Goff v. Burton,* 7 F.3d 734, 737 (8th Cir. 1993) (quotations and citations omitted). In such a case, the prisoner bears the burden of "prov[ing] that but for an unconstitutional, retaliatory motive the transfer would have not occurred." *Id*. at 738. "This is a 'but for' test dealing with motive, not causation." *Sisneros v. Nix,* 95 F.3d 749, 752 (8th Cir. 1996).

The Court finds that plaintiff's complaint is sufficient to pass initial review on the retaliation claim. Plaintiff's allegations, which must be accepted as true that this stage, indicate he only had "B" worker classification and corresponding restrictions placed on him after he filed grievances and complaints, that there were no legitimate security concerns that triggered the restrictions, and that the defendants placed the restrictions as retaliation for plaintiff filing grievances and complaints. *See Hartsfield,* 107 Fed. App'x at 696 (reversing the dismissal on initial review of claim alleging a retaliatory misconduct report after plaintiff declared his intention to file a grievance). The Court will allow plaintiff's retaliation claim to move forward past initial review.

### III. MOTION FOR CLASS CERTIFICATION

Plaintiff filed a motion for class certification. (Doc. 3). However, plaintiff cannot bring a class action as there is no indication that plaintiff is an attorney. Therefore, he cannot represent other persons or organizations in this case. *See Knoefler v. United Bank of Bismarck,* 20 F.3d 347 (8th Cir. 1994) (holding that a nonlawyer has no right to represent another entity in federal court). Plaintiff's motion is denied.

10

## IV. MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff filed a motion for a temporary restraining order ("TRO") and preliminary injunction related to the Eighth Amendment claim. (Docs. 4, 4-1, 4-2). A court may order a temporary injunction under Federal Rule of Civil Procedure 65. Rule 65 provides for both "temporary restraining orders" and "preliminary injunctions." In prior rulings, this Court has discussed the differences between a temporary restraining order (TRO) and a preliminary injunction. *See McLeodUSA Telecommc'ns Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 n. 1 (N.D. Iowa 2005); *Branstad v. Glickman*, 118 F. Supp. 2d 925, 935–37 (N.D. Iowa 2000). The principal difference is that a TRO is sought ex parte. Additionally, a TRO is "temporary" in the sense that it expires after a specified time, whereas a "preliminary injunction" may last for an unlimited time prior to entry of permanent injunctive relief or until it is dissolved. *See* FED. R. CIV. P. 65; *Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1027 (N.D. Iowa 2010).

The Court has considerable discretion in ruling on a request for injunctive relief. *See Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, 801 F.3d 927, 936 (8th Cir. 2015), *vacated on other grounds*, 2016 WL 2842448 (2016). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). Under the Eighth Circuit's *Dataphase* test, the court must consider: (1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003). "No single factor is dispositive, as the district court must balance

all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006); *see also Dataphase*, 640 F.2d at 113 ("At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.").

First, plaintiff's motion is premature, as the complaint has not been formally filed or served. Under Federal Rule of Civil Procedure 65(b)(1)(B), a court may issue a TRO without notice to the adverse party only if the movant, among other things, "certifies in writing any efforts made to give notice and the reasons why it should not be required." Plaintiff has not filed any such certification. Additionally, under Federal Rule of Civil Procedure 65(a)(1) a Court "may issue a preliminary injunction only on notice to the adverse party." Again, defendants have yet to be served in this action and have not been given any notice of plaintiff's motion.

Second, plaintiff has not shown a likelihood of success on the merits under the *Dataphase* test. Rather, he has only stated a claim sufficient to proceed past initial review. *See Vice v. Kaemingk,* No. 4:16-CV-04127, 2016 WL 7263736, at *4 (D.S.D. Dec. 15, 2016) (denying TRO and preliminary injunction on Section 1915A initial review of complaint; "At this stage, [the plaintiff] cannot show that he is likely to succeed on the merits. He has only stated a claim upon which relief may be granted. The defendants have not been served and have not had a chance to respond."). Plaintiff's motion is denied with leave to refile.

### V.     *MOTION TO APPOINT COUNSEL*

Plaintiff also filed a motion to appoint counsel. (Doc. 2). In his motion he states that he is indigent. Under Title 28, United States Code, Section 1915(e)(1) "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). "The [district]

12

court has a good deal of discretion to determine whether representation is warranted given the nature of the case and the litigants." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006); *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).

> When determining whether to appoint counsel for an indigent civil litigant, the district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim. *See Johnson v. Williams*, 788 F.2d 1319, 1322–23 (8th Cir. 1986).

*Stevens*, 146 F.3d at 546; *see also Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (stating that the court should consider: 1) the factual complexity of the issues; 2) the ability of the plaintiff to investigate the facts; 3) the existence of conflicting testimony; 4) the ability of the plaintiff to present their claims; and 5) the complexity of the legal arguments). However, those factors are not exclusive, and the court may consider other issues. *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 891 (8th Cir. 2020) (reversing the district court's denial of a motion to appoint counsel after finding that the plaintiff presented "a serious claim" and "the case otherwise cannot proceed to a timely decision on the merits" without the assistance of counsel).

After reviewing plaintiff's complaint and motion to appoint counsel, the Court finds that plaintiff would benefit from the appointment of counsel. Specifically, based on the type of claims that plaintiff is making, the Court finds that discovery may be somewhat complicated and beyond the ability of an incarcerated individual to complete. Additionally, plaintiff makes an argument about whether the claims related to ventilation were subject to grievance procedures under the Iowa Department of Corrections policy, which will likely require briefing. Also, because plaintiff is not proceeding in forma pauperis, he will need to serve the summons and the complaint. Finally, plaintiff notes that the facility in which he is housed remains on a lockdown status so he has "no physical access to the prison law library." (Doc. 2, at 1). Therefore, the Court grants plaintiff's

13

motion to appoint counsel. (Doc. 2). Because the Court is appointing plaintiff counsel, it denies his pro se motion for a hearing with leave to refile by counsel.

## VI. CONCLUSION

For the reasons stated:

1. After an initial review, plaintiff's claims related to the air quality and ventilation conditions and retaliation are **allowed to proceed**.
2. After an initial review, plaintiff's due process claim related to the classification system is **dismissed** for failure to state a claim for which relief can be granted.
3. Plaintiff's motion for class certification (Doc. 3) is **denied**.
4. Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 4) is **denied** with leave to refile.
5. Plaintiff's motion to appoint counsel (Doc. 2) is **granted**. The Clerk of Court is directed to appoint counsel for plaintiff. Once counsel is appointed, the Clerk of Court is directed to issue the summons and waiver of service form. Appointed counsel will have thirty days to serve the complaint as is required by FED. R. CIV. P. 4(c).
6. Plaintiff's motion for hearing (Doc. 6) is **denied** with leave to refile.

**IT IS SO ORDERED** this 7th day of April, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa